United States Court of Appeals,

Eleventh Circuit.

No. 95-3584.

Mary Jo HUGHES, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

April 21, 1997.

Appeal from the United States District Court for the Middle District of Florida.

Before HATCHETT, Chief Judge, COX, Circuit Judge, and MESKILL[*], Senior Circuit Judge. (No. 94-85-CIV-OC-10), Wm. Terrell Hodges, Judge.

PER CURIAM:

Mary Jo Hughes was shot by two assailants in the parking lot of the United States Post Office in Ocala, Florida. She brought suit against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-80, alleging negligence on the part of the United States Postal Service in failing to provide adequate security. The district court dismissed Hughes' claim for lack of subject matter jurisdiction because it concluded that the alleged negligent conduct by the Postal Service fell within the discretionary function exception of the FTCA. We affirm.

BACKGROUND

At around 10:45 p.m. on April 19, 1993, Hughes was shot by two assailants as she sat in her car in the parking lot of the Ocala Post Office. She sustained serious bodily injury. Hughes had just returned from retrieving her mail from her post office box, access

_____

[*]Honorable Thomas J. Meskill, Senior U.S. Circuit Judge for the Second Circuit, sitting by designation.

to which was permitted twenty-four hours a day.

Hughes filed a complaint against the United States under the FTCA.  In her complaint, she alleges negligence on the part of the Postal Service in permitting the Ocala Post Office to remain open on a twenty-four hour basis while (1) providing no security for its patrons;  (2) providing inadequate lighting around the building and in the parking lot during nighttime hours;  and (3) installing and maintaining hedges, shrubbery, and trees on the premises that provided places for criminals to hide and obscured the artificial lighting.  In her response to the Government's motion to dismiss, Hughes says the alleged negligence is not the Postal Service's decision to provide twenty-four hour access or its decision to locate the post office in an allegedly high crime area.  Instead, her response characterizes the alleged negligence as acts or omissions regarding the post office premises after these two decisions were made.

The district court concluded that the alleged negligent conduct fell within the discretionary function exception of the FTCA, 28 U.S.C. § 2680(a).  In reaching that conclusion, the court utilized the two-part test refined by the Supreme Court in *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) and applied by this court in *Powers v. United States,* 996 F.2d 1121 (11th Cir.1993), and *Autery v. United States,* 992 F.2d 1523 (11th Cir.1993).

ISSUE ON APPEAL AND STANDARD OF REVIEW

We must decide whether the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), bars a suit against the United

States for the alleged failure of the Postal Service to provide adequate security measures at a post office. We review the district court's interpretation and application of the discretionary function exception *de novo.* *Powers,* 996 F.2d at 1123.

DISCUSSION

Congress, through the Federal Tort Claims Act, has waived the sovereign immunity of the United States by giving district courts jurisdiction over civil actions against the United States

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Congress, however, has excepted from this limited waiver "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

In a series of cases, the Supreme Court has articulated and refined the analysis used in applying this discretionary function exception. *See Gaubert,* 499 U.S. at 315, 111 S.Ct. at 1267; *Berkovitz by Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *United States v. S.A. Empresa De Viacao Aerea Rio Grandense* (*Varig Airlines*), 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). This court has

applied that analysis in *Powers,* 996 F.2d at 1121, and *Autery,* 992 F.2d at 1523.

We apply a two-part test to determine whether challenged conduct by a government employee falls within the discretionary function exception. *Powers,* 996 F.2d at 1124. First, we must determine whether the challenged conduct involves an element of judgment or choice. *Id.* Second, we must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert,* 499 U.S. at 322-23, 111 S.Ct. at 1273 (quoting *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1959).

In reviewing the district court's dismissal of Hughes' complaint for lack of subject matter jurisdiction, we accept the factual allegations in her complaint as true. [1] *See Gaubert,* 499 U.S. at 327, 111 S.Ct. at 1276; *Berkovitz,* 486 U.S. at 540, 108

---

[1]The district court in its order and the parties on this appeal treat the Government's motion to dismiss as a factual attack on the district court's subject matter jurisdiction. The motion, however, is more properly treated as a facial attack. Nothing in the Government's motion or memorandum in support thereof challenges the factual assertions made in Hughes' complaint. In fact, the Government specifically argues in its memorandum that Hughes' claims "are barred by the discretionary function exception to the FTCA, even assuming arguendo the accuracy of allegations that such discretion was not properly exercised." (R. 1-31 at 10.) Our concern under the discretionary function exception is not whether the allegations of negligence are true; instead, our concern is whether the *nature of the conduct* involves judgment or choice and whether that judgment is of the kind that the exception was designed to protect. *See Gaubert,* 499 U.S. at 322-23, 111 S.Ct. at 1273; *Dalehite,* 346 U.S. at 33-34, 73 S.Ct. at 966-67.

Furthermore, the Government argues that the plaintiff bears the burden of showing that the government's conduct is not protected by the discretionary function exception. We did not decide that issue in *Autery,* 992 F.2d at 1526 n. 6, and we do not address it here. The allocation of burdens is not significant when the relevant facts are undisputed.

S.Ct. at 1960-61; *Powers,* 996 F.2d at 1125.

Under the first part of the test, the "relevant inquiry is whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner." *Powers,* 996 F.2d at 1125. *See also Autery,* 992 F.2d at 1528. Congress has given the Postal Service the general power to operate and maintain buildings and facilities. 39 U.S.C. § 401(6). The regulations promulgated under this general statutory authority designate the Chief Postal Inspector as the Security Officer for the Postal Service and make him "responsible for the issuance of instructions and regulations pertaining to security requirements within the Postal Service." 39 C.F.R. § 231.1(b). Regarding each individual post office, the postmaster or a supervisor designated by the postmaster acts as Security Control Officer for that post office and is "responsible for the general security of the post office, its stations and branches, in accordance with rules and regulations issued by the Chief Postal Inspector." 39 C.F.R. § 231.2. In addition, the Postal Operations Manual serves as regulations of the Postal Service. 39 C.F.R. § 211.2(a)(2). At the time of Hughes' shooting, the Postal Operations Manual stated that "[a]t the postmaster's discretion, lobbies may remain open when no one is on duty to allow customer access to post office boxes and self-service equipment, provided customer safety, security provisions and police protection are deemed adequate." Postal Operations Manual, § 221.2.23 (Issue 5, 1/31/83).

These general guidelines do not mandate a specific course of conduct regarding security at a post office. Instead, security

decisions such as the ones challenged here—the posting of security personnel in the lobby or in the parking lot, the location and intensity of lighting, and the planting and maintenance of trees and shrubbery—are left to the discretion of the Security Control Officer for each post office in accordance with regulations established by the Chief Postal Inspector. There is ample room for postal employees to exercise judgment and choice. In fact, the Postal Operations Manual specifically states that the postmaster has discretion in assessing the need for security with regards to providing twenty-four hour access. "Only if a federal statute, regulation, or policy specifically prescribes a course of action embodying a *fixed or readily ascertainable standard,* will a government employee's conduct not fall within the discretionary function exception." *Autery,* 992 F.2d at 1529 (citation and quotations omitted) (emphasis in original). Because there are no such statutes, regulations, or policies present here, the first part of the discretionary function test is satisfied.

Under the second part of the test, we must decide whether the judgment afforded postal employees regarding security measures is the type of judgment that the discretionary function exception was designed to shield. Here, we focus on whether the challenged actions are "susceptible to policy analysis." *Powers,* 996 F.2d at 1125 (quotation omitted). Protected "[d]iscretionary conduct is not confined to the policy or planning level." *Gaubert,* 499 U.S. at 325, 111 S.Ct. at 1275. "Day-to-day management ... regularly requires judgment as to which of a range of permissible courses is the wisest." *Id.* at 325, 111 S.Ct. at 1275. As charged by

Congress, "[t]he Postal Service shall have as its basic function the obligation to provide postal services to bind the Nation together through the personal, educational, literary, and business correspondence of the people." 39 U.S.C. § 101(a). To this end, the Postal Service "shall provide prompt, reliable, and efficient services to patrons in all areas and shall render postal services to all communities." *Id.* Decisions involving security at post offices are a fundamental part of the economic and social policy analysis required to achieve these goals. Moreover, we need not inquire whether any particular postal employee here engaged in a weighing of policy considerations in the decision regarding security at the Ocala Post Office. "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert,* 499 U.S. at 324, 111 S.Ct. at 1274. Postal employees must decide how to allocate resources so as to best serve customers in a prompt, reliable, and efficient manner. While financial considerations alone may not make a decision one involving policy, such considerations are particularly relevant to the Postal Service, which is "operated as a basic and fundamental service provided to the people." 39 U.S.C. § 101(a). We will not second guess the Postal Service's resource allocation decisions here. *See Powers,* 996 F.2d at 1126; *Autery,* 992 F.2d at 1531.

## CONCLUSION

Decisions by the Postal Service regarding security at post

offices fall within the discretionary function exception of the FTCA, and the district court properly concluded that it lacked subject matter jurisdiction over Hughes' action.

AFFIRMED.