FILED
United States Court of Appeals
Tenth Circuit

April 10, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MOHAMMAD ABED AWAD,

    Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

    Defendant - Appellee.

No. 18-2159
(D.C. No. 1:15-CV-00373-MV-CG)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **O'BRIEN**, and **MATHESON**, Circuit Judges.
_____

Mohammad Abed Awad appeals from the dismissal of his claims for

negligence, false arrest, and false imprisonment brought under the Federal Tort

Claims Act (FTCA), 28 U.S.C. §§ 1346(b)(1) and 2671-2680. We affirm.

I

On February 20, 2012, an undercover officer with the Albuquerque Police

Department (APD) purchased a controlled substance from an individual working at a

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

smoke shop owned by Awad. The transaction was recorded on video, and according to the APD officer's report, the seller "appeared to be Mohammed Awad." Aplt. App. at 44. Two years later, in March 2014, two federal agents with the Drug Enforcement Administration (DEA) reviewed the video, identified Awad as the seller, and applied for search warrants.[1] On March 20, 2014, after obtaining a warrant, DEA agents executed a search warrant for Awad's residence and arrested him without a warrant. A grand jury later indicted him on a single count of distributing a controlled substance analogue, and he was incarcerated from the date of his arrest, March 20, 2014, until September 9, 2014, when the government dismissed the charge because the seller in the video was actually Awad's brother, Belal Awad. On September 17, 2014, Belal (who resembles Awad) was indicted for distribution of a controlled substance analogue based largely upon the video. The supporting affidavit in that case identified Belal, not Awad, as the person in the video.[2] *See* Aplt. App. at 34-35 (Special Agent S. H. Aff.); *id.* at 208 (Dist. Ct. Order at 3); *see also* Aplee. Br. at 3-4 (acknowledging the transaction involved Belal, not Awad).

---

[1] According to the supporting affidavit, the APD undercover officer believed Awad was the individual with whom he made contact in the store; after reviewing the video, the two DEA agents did as well.

[2] The supporting affidavit in Belal's case indicates his uncle identified Belal as the salesman of the transaction from still photos of the video. *See* Aplt. App. at 35. The district court ultimately dismissed Belal's case without prejudice. *See United States v. Belal Awad*, No. 14-CR-3611-MCA (D. N.M. Feb. 17, 2015).

Based on these facts, Awad brought this FTCA action against the United States, asserting negligence, false arrest, and false imprisonment. The premise for all three claims was his allegation that the DEA agents incorrectly identified him as the seller in the video. As he would have it, the agents violated DEA policies by executing a warrantless arrest without probable cause.

The government sought dismissal under Fed. R. Civ. P. 12(b)(1), or, alternatively, summary judgment under Fed. R. Civ. P. 56. It contended the district court lacked subject matter jurisdiction because all three claims fell under the discretionary function exception to the FTCA's waiver of sovereign immunity. It also argued that the false arrest and false imprisonment claims did not fall under the FTCA's separate waiver for enumerated intentional torts committed by law enforcement officers. According to the government, the false arrest and false imprisonment claims were based on the DEA agents' misidentification of Awad as the seller, which alleged negligence, but not intentionally tortious conduct.

A report and recommendation from a magistrate judge recommended dismissing all three claims under the discretionary function exception. The district judge decided the discretionary function exception barred Awad's negligence claim and the false arrest and false imprisonment claims did not fall under the waiver of sovereign immunity for intentional torts committed by law enforcement officers. The latter because Awad did not allege the DEA agents intentionally misidentified him or arrested and incarcerated him in spite of knowing he was not the seller. Looking to the facts alleged rather than the "intentional" labels Awad assigned to the motives

3

and acts of the agents, the district judge concluded these allegations amounted to negligence or recklessness at most, and therefore, the government was entitled to summary judgment. Awad appealed.

## II

### A. Standard of Review

A district court must convert a motion to dismiss under Fed. R. Civ. P. 12(b)(1) to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or a motion for summary judgment under Fed. R. Civ. P. 56 "if the jurisdictional question is intertwined with the merits of the plaintiff's case." *Bell v. United States*, 127 F.3d 1226, 1228 (10th Cir. 1997) (brackets and internal quotation marks omitted). "Whether the discretionary-function exception applies is such a question." *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999). The judge correctly treated the government's dispositive motion as a motion for summary judgment under Rule 56. *See Garcia v. U.S. Air Force*, 533 F.3d 1170, 1174, 1175 (10th Cir. 2008). We review the judge's "determination of the applicability of the discretionary function exception de novo, considering the allegations in the complaint as well as the evidence in the record." *Id.* Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### B. Discretionary Function Exception

"[T]he FTCA waives sovereign immunity for certain state law tort claims against the United States." *Garling v. U.S. Envtl. Prot. Agency*, 849 F.3d 1289, 1294

4

(10th Cir. 2017). However, several types of claims are excepted from the waiver of sovereign immunity, including claims involving discretionary functions. *See* 28 U.S.C. § 2680(a). Under the discretionary function exception, the United States retains sovereign immunity for:

> [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

*Id.*; *see also Garling*, 849 F.3d at 1295. The discretionary function "exception marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Elder v. United States*, 312 F.3d 1172, 1176 (10th Cir. 2002) (internal quotation marks omitted). "Because the exception applies whether or not the discretion involved was abused, it is irrelevant whether the government employees were negligent." *Id.* (brackets and internal question marks omitted).

"To determine whether the discretionary function exception applies to the challenged conduct, this circuit employs the two-pronged test of *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)." *Id.* We first ask whether the conduct is discretionary, that is, whether "it involves an element of judgment or choice." *Berkovitz*, 486 U.S. at 536. "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* "Second, if the conduct was discretionary, we consider whether it required the exercise of judgment 'based on considerations of

5

public policy.'" *Garling*, 849 F.3d at 1295 (quoting *Berkovitz*, 486 U.S. at 537); *see Elder*, 312 F.3d at 1181 ("Only decisions susceptible to policy analysis are protected by the exception." (internal quotation marks omitted)).  This element furthers the goal of the exception, which is "to prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  *Elder*, 312 F.3d at 1176 (internal quotation marks omitted).  If both prongs of the *Berkovitz* test are satisfied, the discretionary function exception applies, the court lacks jurisdiction, and the claim is barred.

### C.  *Intentional Torts & the Law Enforcement Proviso*

There is another exception to the FTCA's sovereign immunity waiver for certain intentional torts, including false arrest and false imprisonment.  *See* 28 U.S.C. § 2680(h).[3]  But, as sometimes happens, there is an exception to the exception: Congress included a proviso waiving sovereign immunity for six enumerated intentional torts "when they arise from the 'acts or omissions' of federal 'law enforcement officers.'"  *Garling*, 849 F.3d at 1295 (quoting § 2680(h)).  "Known as the 'law enforcement proviso,'" *Millbrook v. United States*, 569 U.S. 50, 52 (2013), § 2680(h) states:  "Provided[] [t]hat, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising . . . out of

---

[3] 28 U.S.C. § 2680(h) excludes from the sovereign immunity waiver "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]"

assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution," § 2680(h) (italics omitted).  The law enforcement proviso "carved out an exception to § 2680(h)'s preservation of the United States' sovereign immunity for intentional torts . . . that arise out of the wrongful conduct of law enforcement officers."  *Millbrook*, 569 U.S. at 52.

III

Awad asserts claims for negligence, false arrest, and false imprisonment.  We first evaluate his negligence claim and then his intentional tort claims.

*A.  Negligence*

Awad alleged the DEA agents were negligent in misidentifying him as the seller in the video.  He averred the arresting DEA agent simply reviewed the 2-year-old video and identified him as the seller, even though the Albuquerque police officer indicated in his report that the seller only "appeared to be Mohammed Awad."  Aplt. App. at 13, para. 28.  He further alleged the agents knew the smoke shop was operated by family members who resembled one another, yet the agents made the identification without having any prior encounters to positively identify him.  Based on these general allegations, Awad claimed the government was liable for the agents' negligence because they "negligently and falsely identified [him] as an individual who had distributed a controlled substance . . . ."  *Id.* at 21, para. 85.  He further alleged they "negligently arrested [him] falsely," *id.*, para. 86, "and thereafter negligently incarcerated [him] continuously for 173 consecutive days," *id.* at 22, para. 87.

7

This claim satisfies the first prong of the *Berkovitz* test because the manner in which law enforcement agents conduct their investigation and identify suspects involves elements of judgment or choice. *See Garling*, 849 F.3d at 1296 (holding that investigation by Environmental Protection Agency was discretionary); *see also Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997) ("We readily conclude that the decisions regarding how to locate and identify the subject of an arrest warrant and regarding whether the person apprehended is in fact the person named in the warrant are discretionary in nature and involve an element of judgment or choice."). Indeed, the record contains undisputed evidence that the investigation and identification of suspects is within the discretion of DEA case agents and their supervisors. Aplt. App. at 73-74, para. 12 (Williams Decl., DEA Chief of Operations). Agents have discretion to choose which "inquiries to undertake—and the inquiries that are sufficient—to identify a suspect." *Id.* at 74, para. 14. They also "must consider the unique facts of each case, balance competing investigative priorities, and apply their professional knowledge and experience to identify suspects from their investigative activities." *Id.*

Awad disputes this conclusion, citing three specific DEA policies requiring probable cause to effect an arrest or file a criminal complaint, but these policies are inapposite.[4] Of course, probable cause is a constitutional requirement of any arrest, but Awad cites nothing that requires DEA agents to follow a "prescribe[d] course of

---

[4] Awad relies on the DEA Agents Manual §§ 6641.12, 6641.13, and 6641.15. *See* Aplt. App. at 37, 79.

action" in gathering probable cause and identifying a suspect, *Berkovitz*, 486 U.S. at 536. Indeed, deciding whether probable cause has been established involves discretion and judgment; the requirement for probable cause to exist does not make the ultimate, evaluative decision non-discretionary. *Cf. Taitt v. United States*, 770 F.2d 890, 893 (10th Cir. 1985) (recognizing that statutory requirement for entry into the witness protection program is a discretionary determination). Even if they were mistaken, the DEA agents made a discretionary determination that probable cause to arrest Awad existed. Awad's insistence that their initial evaluation was wrong does not inform this debate; it is irrelevant to our analysis. *See Duke v. Dep't of Agric.*, 131 F.3d 1407, 1410 (10th Cir. 1997) ("[I]n applying the discretionary function exception we do not consider whether the decision or nondecision was negligent or wrong.").

This claim also satisfies the second prong of the *Berkovitz* test. The record indicates the decision whether to investigate, as well as decisions concerning the nature and extent of an investigation, are subject to economic, political, and social policy considerations. Aplt. App. at 74, para. 15 (Williams Decl.). Among other things, DEA agents must account for social policy considerations such as whether and what type of weapons to use, the types of investigative techniques that may be appropriate, the surveillance methods that would be most effective, and how to best and most safely execute warrants. *Id.* They must economically balance their limited resources among competing investigations and sometimes, as was the case here, conduct joint investigations with other law enforcement agencies. *See id.* at 74-75,

9

para. 16. These collaborative investigation arrangements, moreover, manifest political policy considerations, particularly to ensure comity with other federal, state, and local law enforcement agencies. *See id.* at 75, para. 17. Indeed, other courts have recognized that these investigative decisions, which include the process of verifying a suspect's identity, "'are rooted in policy considerations.'" *Milligan v. United States*, 670 F.3d 686, 694 (6th Cir. 2012) (quoting *Mesa*, 123 F.3d at 1439). Awad's negligence claim is barred by the discretionary function exception.

### B. *Intentional Torts—False Arrest & False Imprisonment*

"[A] plaintiff may not 'recast a negligence tort as an intentional tort to take advantage of the law enforcement exception to § 2680(h).'" *Garling*, 849 F.3d at 1298 (quoting *Milligan*, 670 F.3d at 696). "In determining whether [a plaintiff's] claims fall within the law enforcement proviso, we look to the substance of their claims and not how they labeled them in their complaint." *Id.* If a "complaint attempts to bring intentional tort claims without alleging intentional tort facts," the law enforcement proviso will not apply. *Id.*

Awad's amended complaint is devoid of any facts suggesting intentionally tortious conduct. His false arrest claim avers he was arrested "based on the false identification of [him] as the individual who had distributed a controlled substance." Aplt. App. at 22-23, para. 94. Similarly, his false imprisonment claim alleges he was incarcerated "for 173 consecutive days . . . based on [the] false identification." *Id.* at 23, para. 101. Both claims are predicated on the DEA agents' misidentification of him as the seller in the video. But there are no allegations the DEA agents

10

intentionally misidentified him.  Nor are there any allegations they arrested or incarcerated him knowing he was not the seller.  Although Awad summarily alleges the government confined him "knowing it had no lawful authority to do so," *id.* at 24, para. 104, the only factual support for this allegation is the misidentification.  As with the negligence claim, the amended complaint merely suggests (without the benefit of specific factual allegations) the arrest and incarceration were the product of unintentional, albeit wrongful, conduct during the investigation; it alleges the government had a duty of care to identify the correct suspect and not arrest and incarcerate Awad based on a mistaken (which he conveniently labels as "false") identification.  These allegations predicate liability on negligence or, at most, recklessness, but not intentional conduct.  *See Garling*, 849 F.3d at 1298.  The law enforcement proviso does not apply to these false arrest and false imprisonment claims.

Moreover, the discretionary function exception bars these claims because they are based solely on the DEA agents' alleged negligence in conducting their investigation and identifying Awad as the seller.  We have already discussed the discretionary nature of that process and the policy considerations attending it.  Awad's attempt to recast his negligence allegations in intentional-tort terms is unavailing.  Consequently, the district court lacked jurisdiction over the false arrest and false imprisonment claims.[5]

---

[5] Awad's failure to allege intentionally tortious conduct obviates any need to consider the interaction between § 2680(a) and § 2680(h).  *See Garling*, 849 F.3d at

11

IV

Awad's negligence claim is barred by the discretionary function exception to the FTCA's waiver of sovereign immunity. Although Awad also asserts nominal claims for false arrest and false imprisonment, the substance of his allegations do not reflect intentionally tortious conduct and, as a consequence, they do not fall within the law enforcement proviso and are barred by the discretionary function exception. For want of jurisdiction, the district court properly dismissed the suit.

The district court's judgment is affirmed.

Entered for the Court


Terrence L. O'Brien
Circuit Judge

---

1298 n.5 (recognizing circuit split regarding whether intentional tort claims brought under § 2680(h) must also avoid the discretionary function exception of § 2680(a) but declining to consider the issue because the plaintiff failed to allege intentional tort facts); *see also id.* at 1298 (holding that claims nominally labeled as intentional torts, including "false arrest" and "false imprisonment," stemmed from allegedly negligent or reckless investigation and raid and, therefore, were barred by the discretionary function exception).